**GARY I. GRENLEY**, OSB #75138
ggrenley@grebb.com
**DAVID E. DEAN**, OSB #81206
ddean@grebb.com
GRENLEY ROTENBERG EVANS
  BRAGG & BODIE, P.C.
1211 S.W. Fifth Avenue
1100 Pacwest Center
Portland, OR  97204-3737
Telephone:  503/241-0570
503/241-0914 (fax)

Liaison Counsel

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
WILLIAM J. DOYLE II
DOUGLAS R. BRITTON
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re LOUISIANA-PACIFIC, CORP., ERISA LITIGATION | ) Master File No. 02-CV-1023-KI<br>) **(Consolidated Cases)**<br>) |
| This Document Relates To:<br><br>    ALL ACTIONS. | ) CLASS ACTION<br>)<br>) FIRST CONSOLIDATED AMENDED<br>) COMPLAINT<br>) |

## INTRODUCTION

1.     This is a suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(2) and (3), brought on behalf of the Louisiana-Pacific Hourly 401(k) and Profit Sharing Plan and the Louisiana-Pacific Salaried 401(k) and Profit Sharing Plan (the "Plans"), and the participants and beneficiaries of the Plans to remedy defendants' breaches of fiduciary duty under ERISA.  The Plans were formed on or about December 31, 2000 by a merger with the predecessor Louisiana-Pacific Hourly Employee Stock Ownership Trust and the predecessor Louisiana-Pacific Salaried Employee Stock Ownership Trust ("Predecessor Plans") and are successors-in-interest to the Predecessor Plans.  (The Louisiana-Pacific Hourly and Salaried Employee Stock Ownership Trusts, as they existed prior to the merger with the Plans, will hereinafter be referred to as the "LP ESOTs" in contradistinction to "the Plans," unless context dictates otherwise.)  The Plans are designated as 401(k) compliant retirement plans operated and established by Louisiana-Pacific, Corp. ("LP" or the "Company"), the Plans' Administrative Committee and the Plans' Trustee.  This civil enforcement action seeks relief on behalf of the Plans and all participants and beneficiaries of the Plans.

2.     During the Relevant Period, defendants failed to disclose to plaintiffs and Class members that maintaining concentrated investments in Company stock was imprudent and exposed their retirement savings to unreasonable risk of loss.  Defendants failed to provide plaintiffs and Class members with adequate information about the Company's financial condition and prospects despite offering the Company's stock as a prudent Plan investment.  Defendants unreasonably delayed the transfer of participants' LP ESOT accounts into their 401(k) accounts, resulting in the inability of participants to diversify their Company stock during a time period in which the value of LP stock declined dramatically.  Defendants continue to offer and contribute Company stock to plaintiffs and Class members as a prudent Plan investment.

3.     As a result of defendants' failure to disclose the material information to Plan participants, plaintiffs and Class members were deprived of their opportunity to make informed judgments as to their investments in LP stock.  Had plaintiffs and Class members been adequately informed about: (a) the financial condition of the Company; (b) the myriad of risks associated with

investing in Company stock as opposed to diversifying their savings; and (c) LP's current and future prospects, they would not have invested their retirement monies in LP common stock or maintained significant investments in LP common stock in the Plans and they would not have sustained the losses they ultimately endured.

4.     During the Relevant Period, defendants required plaintiffs and Class members to invest a portion of their retirement savings in LP common stock and imposed restrictions on the sale of shares of Company stock.  As a result of the restrictions on the sale of LP common stock imposed by defendants and the delay in lifting those restrictions under the circumstances known to defendants as set forth below, plaintiffs and Class members were deprived of the opportunity to exercise control over their retirement savings and/or forced to concentrate their retirement savings in LP common stock.

5.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure of behalf of themselves, a Class of all persons similarly situated and on behalf of the Plans.  Defendants are entities and persons acting in a fiduciary capacity or who assumed a fiduciary role in relation to the Plans.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to ERISA, 29 U.S.C. §1132(e)(1), which grants to United States District Courts jurisdiction over claims of this type.

7.     This Court has personal jurisdiction over defendants because, as required by ERISA, 29 U.S.C. §1132(e)(2), one or more of the defendants may be found in this District.  The Court also has personal jurisdiction over defendants because the Company's principal executive offices are in Portland, Oregon.  Defendants systematically and continuously do business in this state and the case arises out of defendants' acts within this state.

8.     Venue is proper pursuant to ERISA, 29 U.S.C. §1132(e)(2), because defendants administer the Plans in this District, some or all of the actionable conduct for which relief is sought occurred in this District and one or more of the defendants may be found in this District.

## THE PARTIES

9.      Plaintiff Frederick J. Darlington is a resident of the State of California.  Darlington is a former employee of LP and is a participant in the Plans within the meaning of ERISA, 29 U.S.C. §1002(7) and (8).

10.      Plaintiff Richard A. Jordan is a resident of the State of California.  Jordan is a former employee of LP and is a participant in the Plans within the meaning of ERISA, 29 U.S.C. §1002(7) and (8).

11.      Defendant Louisiana-Pacific, Corp. is a Delaware corporation with its principal place of business at 805 SW Broadway, Portland, Oregon 97205.  LP is a manufacturer and distributor of building materials, commodity and specialty building products to retail, wholesale, home building and industrial customers.  The Company's products are used primarily in new home construction, repair and remodeling and manufactured housing.  LP's common stock is traded on the New York Stock Exchange.

12.      LP is Plan Sponsor as defined by ERISA, and on information and belief, has at all times acted in regard to the Plans and the Predecessor Plans in a fiduciary capacity in exercising authority or control respecting the management or disposition of the Plans assets in accordance with ERISA, 29 U.S.C. §1002(21), in its own name and acting through the Plans' Administrative Committee.  LP is also a party in interest to the Plans within the meaning of ERISA, 29 U.S.C. §1002(14).  In particular but without limitation:

(a)      LP at all times exercised discretion as to whether to make employer and profit sharing contributions into the Plans, described below, in cash or in stock, and discretion as to whether to sell stock to the Trustee for investment by the Plans;

(b)      LP, as Plan Sponsor, both established the range of investments available to the Plans' participants and reviewed the performance and suitability of investment options;

(c)      LP imposed restrictions on sale of LP common stock shares and failed to lift those restrictions under the circumstances known to it which had the effect of depriving plaintiffs and Class members the opportunity to exercise control over their Plan assets and/or forced them to concentrate their Plan assets in LP stock; and

(d)     On information and belief and in anticipation of further discovery, LP communicated information concerning the actual and projected financial condition and performance of the Company and the value of LP stock directly to participants for the purpose of affecting their decisions concerning whether or not to direct the Plans and/or the Trustee to buy or sell LP stock in the Plans, and exerted undue influence through its agents and directors upon the actions of both named fiduciaries and plan participants in regard to their decisions whether or not to direct the Trustee to invest plan assets in the LP Stock Fund.

13.     LP was responsible for the appointment and on-going monitoring and review of the performance of the Trustee and the Plans' fiduciaries.

14.     Defendant Charles Schwab Trust Company ("Schwab") served at times relevant hereto as Trustee of the Plans.  Schwab's offices are located at 425 Market Street, 7th Floor, San Francisco, California 94105.  Schwab was a fiduciary of the Plans within the meaning of ERISA in that it exercised authority of control over the management or disposition of the Plans assets, in particular, but not limited to, determining whether to purchase and hold shares in the LP Stock Fund.

15.     Defendant Michael J. Tull served at times relevant hereto as Vice President of Human Resources of the Company.  He also served as one of the members of the Plans' Administrative Committee, which was directly responsible for administering the Plans.  In this capacity, Tull has exercised discretionary authority or control with respect to the management of the Plans and authority or control respecting the disposition of their assets and is a fiduciary to the Plans under the terms of ERISA.

16.     Defendant Curtis Stevens served at times relevant hereto as Chief Financial Officer of the Company.  He also served as a member of the Plans' Administrative Committee, which was directly responsible for administering the Plans.   In this capacity, Stevens has exercised discretionary authority or control with respect to the management of the Plans and authority or control respecting the disposition of their assets and is a fiduciary to the Plans under the terms of ERISA.

17.     Defendant Russell Pattee served at times relevant hereto as Controller of the Company.  He also served as a member of the Plans' Administrative Committee, which was directly

responsible for administering the Plans. In this capacity, Pattee has exercised discretionary authority or control with respect to the management of the Plans and authority or control respecting the disposition of their assets and is a fiduciary to the Plans under the terms of ERISA.

18.    The defendants referenced above in ¶¶15-17 are referred to herein as the "Individual Defendants."

19.    Because of the Individual Defendants' positions with the Company, they had access to adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

20.    On information and belief and in anticipation of further discovery, defendants LP and the Individual Defendants exercised discretionary authority respecting the Plans' management and/or administration within the meaning of ERISA, 29 U.S.C. §1002(21)(A), and are or were during relevant times fiduciaries of the Plans based on actions alleged herein. These actions included, but were not limited to, the issuance of communications directed to the Plans' participants concerning the revenue, earnings and financial condition of the Company which affected present or potential assets or investments of the Plans and decisions of the participants relevant thereto and the failure to provide communications directed to the Plans' participants regarding the transfer of their LP ESOT accounts into the 401(k) Plans.

## THE LP EMPLOYEE STOCK OWNERSHIP TRUSTS

21.    Effective January 1, 1989, LP established the Louisiana-Pacific Hourly Employee Stock Ownership Trust and the Louisiana-Pacific Salaried Stock Ownership Trust, which plans, as from time to time amended, were merged with the Plans on or about December 31, 2000. The LP ESOTs were stock bonus plans and employee stock ownership plans covering all hourly and salaried employees of the Company.

22.    At all relevant times, the LP ESOTs were "defined contribution plans" within the meaning of ERISA, 29 U.S.C. §1002(34), and "eligible individual account plans" within the meaning of ERISA, 29 U.S.C. §1107(d)(3).

23.    At all relevant times, the LP ESOTs authorized the Company to make contributions to participants in the form of cash or LP common stock or both, as determined by the Company. Employees were eligible to receive such contributions if they were employed by the Company on the first and last day of the plan year and had completed 1,000 hours of service for the plan year.

24.    While the Company had complete discretion under the terms of the LP ESOTs to make contributions in cash or LP common stock, on information and belief and in anticipation of further discovery, all LP ESOT contributions, as described above, were made in LP common stock.

25.    Under the terms of the LP ESOTs as they were operated at least from 1999 until their merger into the Plans, participants in the LP ESOTs were prohibited from diversifying their shares of LP common stock and placing them in any other investment vehicle until they had completed at least 10 years participation in the LP ESOTs and attained age 55.

26.    A participant who was fully vested in his or her LP ESOT account could, however, elect to invest all or a portion of his or her account in the LP ESOTs' "Savings Fund," which was comprised of fixed income investments, including a money market fund.

27.    Although the LP ESOTs set forth the procedure under which a participant could transfer his or her ESOT account to the Savings Fund, defendants failed to disclose the procedure to participants.

28.    The only reference to the Savings Fund in the Plans' March 2001 Summary Plan Description ("SPD"), provided to participants to explain the details of their benefits, including benefits provided under the LP ESOTs, is a statement that vested LP ESOT accounts that are invested in LP stock "may, under certain conditions, be transferred out of LP stock into a money market fund."  The SPD does not describe the "conditions" necessary for a transfer, nor does it explain what a participant must do to effectuate such a transfer.

29.    As a result of defendants' failure to disclose information regarding the Savings Fund, the participants were unable to exercise full control over their Plan assets and were forced to concentrate their retirement savings in Company stock.

30.    In 1999, LP decided to phase out the LP ESOTs and establish new 401(k) and profit sharing plans to replace them.  In furtherance of this decision, LP added a 401(k) plan feature to the LP ESOTs effective October 1, 1999.  Employer matching contributions and a profit sharing plan were added to the LP ESOTs effective January 1, 2000.

31.    In communications to participants, LP stated that one of the purposes of creating the new 401(k) and profit sharing plan was to "provide a more stable benefit with more investment options."

32.    LP's last regular contribution to the LP ESOTs was made to the participants' LP ESOT accounts on December 31, 1999.  The Company's 1999 LP ESOT contribution was equal to 10% of pay for the plan year.

### THE LP 401(k) AND PROFIT SHARING PLANS

33.    On or about December 31, 2000, the LP ESOTs were merged into and with the profit sharing plans.  The merged Plans, known as the Louisiana-Pacific Hourly 401(k) and Profit Sharing Plan and the Louisiana-Pacific Salaried 401(k) and Profit Sharing Plan became effective January 1, 2000.  The Plans eliminated the employee stock ownership plan provisions, although the participants' ESOT accounts, consisting of LP common shares, remained intact.

34.    As set forth in the Form 11-K filed by the Plans with the SEC in June, 2002, "the Plan[s] [were] created to provide additional incentive and retirement security for eligible employees."

35.    At all relevant times, the Plans were and continue to be "defined contribution plans" within the meaning of ERISA, 29 U.S.C. §1002(34), and "eligible individual account plans" within the meaning of ERISA, 29 U.S.C. §1107(d)(3).  Further, the Plans were and continue to be qualified cash or deferred arrangements within the meaning of the Internal Revenue Code §401(k), 29 U.S.C. §401(k).

36.    At all relevant times, LP was the Plan Sponsor.

37.    At all relevant times, defendants acted as fiduciaries of the Plans pursuant to ERISA, 29 U.S.C. §1002(21)(A).  Defendants exercised discretionary authority or control over the management or administration of the Plans or control in the management or disposition of the Plans' assets.

38.    The Plans are administered, in part, by the Plans' Administrative Committee, comprised of three members appointed by the officers of LP.  The Plans' Administrative Committee has the responsibility for managing the LP Stock Fund and for selecting the investment funds available for employee directed investments.  Certain administrative and discretionary functions are also performed by the directors, officers or employees of the Company or its subsidiaries.

39.    The Trustee of the Plans holds the investments of the Plans in trust on behalf of the participants and beneficiaries.

40.    The Plans authorize a participant to make a pre-tax contribution from 1% to 15% of his or her total eligible compensation.  The maximum annual contribution to the plan by participants in 2000 and 2001 was $10,500.  The Company matches 100% of employee contributions up to 3% of eligible compensation and 25% of the next 2% of eligible compensation.

41.    The Plans also authorize the Company to make profit sharing contributions in LP stock up to 3% of all eligible compensation.  LP is authorized to make the profit sharing contributions either in cash or in LP common stock, or both, with cash contributions to be invested in LP common stock within a reasonable time.  Until July 2002, participants were prohibited from diversifying the LP common stock in their profit sharing accounts.

42.    Throughout the Relevant Period, participants could elect to have their pre-tax contributions and matching contributions invested in the LP Stock Fund, which consists of LP common stock, or a number of other mutual funds.  Profit sharing contributions, however, were only invested in LP common stock.

### TRANSFER OF PARTICIPANTS' LP ESOT ACCOUNTS TO LP 401(k) AND PROFIT SHARING PLANS

43.    On or about January 1, 2000, in furtherance of LP's decision to eliminate its employee stock ownership plans, LP established LP ESOT transfer accounts within the Plans, to hold amounts

transferred from participants' ESOT accounts. The amounts transferred into the participants' ESOT transfer accounts were invested in Company stock. The Plans permitted the participants to invest their ESOT transfer accounts in any of the investment funds offered by the 401(k) Plans.

44.     The Plans authorized the transfer of the amounts held in a participant's LP ESOT account to the participant's LP ESOT transfer account gradually over a four-year period in accordance with the following schedule:

- a minimum of 25% of a participant's vested LP ESOT account balance (determined as of the close of the prior plan year) would be transferred to the participant's ESOT transfer account during the 2000 plan year;

- a minimum of 33 1/3 % of a participant's vested LP ESOT account balance would be transferred to the participant's LP ESOT transfer account during the 2001 plan year;

- a minimum of 50% of a participant's vested LP ESOT account balance would be transferred to the participant's LP ESOT transfer account during the 2002 plan year; and

- 100% of a participant's vested LP ESOT account balance would be transferred to the participant's LP ESOT transfer account during the 2003 plan year.

45.     Notwithstanding the schedule, the Plans authorized the Administrative Committee, in its discretion, to accelerate the transfer. Despite the acceleration provision, which, if invoked by the Administrative Committee would have allowed participants to immediately diversify their Company stock investments, defendants did not complete the transfers until on or about July 2002, at which time LP stock was trading below $7.

46.     As a result of defendants' delay in transferring participants' LP ESOT accounts, the participants were prevented from exercising control over their Plan assets and were forced to concentrate their retirement monies in Company stock. This over-concentration in Company stock resulted in substantial retirement fund losses to plaintiffs and Class members.

47.     The Plans did not require defendants to transfer the participants' LP ESOT account balances into the Plans' LP Stock Fund. However, rather than transfer the LP ESOT accounts into

one of the more prudent investment funds available under the Plans, such as the money market fund, LP chose to move the LP common shares contained in participants' LP ESOT accounts into the Plans' LP Stock Fund on a share per share basis, resulting in the over-concentration of Company stock in participants' 401(k) accounts.

48.     Although defendants were aware that the transfer would result in the over-concentration of Company stock in participants' 401(k) accounts, they did not inform participants of this fact or of the risks inherent in such over-concentration.

49.     As a result of the over-concentration of Company stock in participants' 401(k) accounts and defendants' failure to inform participants that their 401(k) accounts would be over-concentrated in Company stock, plaintiffs sustained substantial losses to their retirement funds.

50.     As a result of defendants' failure to act in a prudent manner, in relation to the Plans' investment in Company stock, Company stock constituted a disproportionate amount of the Plans' assets.  For example, LP common stock constituted over 60% of all the Hourly Plan's assets in 2000, 60% in 2001 and upon information and belief, over 80% in 2002.

51.     Since June 1999, LP common stock has collapsed in value.  Between June 1999 and July 2002, LP stock collapsed in value from over $24 per share to below $7 per share.

52.     On information and belief and in anticipation of further discovery, defendants have done nothing to remedy the problems caused by the Plans' over-concentration in LP common stock. Defendants' imposition and maintenance of restrictions on the transfer of stock purchased through LP ESOT contributions and profit sharing contributions has had the effect of depriving plaintiffs and Class members of having the opportunity to exercise full control over their Plan assets and of forcing them to concentrate their retirement monies in Company stock.  This over-concentration in Company stock resulted in substantial retirement fund losses to plaintiffs and Class members.  Defendants' actions (or lack thereof) deprived plaintiffs and Class members of the opportunity to exercise control over the Plans' assets because they did not have the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the Plans, and incidents of ownership appurtenant to such investments.

53. Plaintiffs and Class members did not exercise independent control over the assets in the Plans because defendants subjected them to improper restrictions, influences and/or failed to provide them with sufficient information about Plan investments.

54. Accordingly, defendants are not relieved of their fiduciary duties under ERISA, 29 U.S.C. §1104(c).

## DEFENDANTS' BREACHES OF FIDUCIARY DUTY

55. ERISA is a comprehensive statute covering virtually all aspects of employee benefit plans, including retirement savings plans, such as the Plans and their Predecessor Plans:

> It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

ERISA §2(b), 29 U.S.C. §1001(b).

56. Under ERISA, those responsible for plan management and oversight stand in a fiduciary relationship in relation to plan participants. Pursuant to ERISA, a "fiduciary" is defined broadly to include all persons or entities that are able to exercise discretionary authority or control over the management of a plan or its assets.

57. ERISA requires strict fidelity and loyalty in the execution of a plans' management pursuant to 29 U.S.C. §1002(21). In addition, ERISA imposes on plan management a fiduciary duty of prudence, requiring those responsible for plan management to "discharge his [or her] duties with respect to a plan solely in the interest of the participants and their beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1). ERISA also imposes on those responsible for plan management a duty of loyalty, requiring the fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries and ... for the exclusive purpose of ... providing benefits to the participants and their beneficiaries." 29 U.S.C. §1104(a)(1).

58.    Defendants' fiduciary duties of loyalty, due care and prudence include a duty to disclose and inform of any material adverse information about the Company insofar as such information affects the plans' investments.  When a plan is composed of various investment funds, such as the Plans, this duty to inform and disclose also includes: (a) the duty to impart to the plans' participants material information which the fiduciary knows or should know is sufficient to appraise the average plan participant of the risks associated with investing in any particular investment; and (b) a duty to convey complete and accurate information material to the circumstances of the plan participants and their beneficiaries.  The disclosure duties and fiduciary duties imposed on plan management by ERISA were designed to reduce the disparity in access to company information that exists between the fiduciaries and the participants and their beneficiaries.

59.    ERISA imposes on plan fiduciaries the duty, *inter alia*, to adhere to the terms of the plan, including those purposes established in the plan document as, in this instance, "to provide ... retirement security for eligible employees."

60.    Other duties imposed upon those who are fiduciaries under ERISA by virtue of their exercise of authority or control respecting the management or disposition of plan assets include but are not limited to:

(a)    The duty to investigate and evaluate the merits of decisions affecting the use and disposition of plan assets;

(b)    The duty to evaluate all investment decisions with "an eye single" to the interests of plan participants and beneficiaries;

(c)    The duty to avoid placing themselves in a position where their acts as officers, directors or employees of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan, and, if they find themselves in such a position, to seek independent, unconflicted advice;

(d)    To the extent that a party is responsible for appointing and removing named fiduciaries, the duty to monitor those persons who have been named;

(e)    The duty, if a directed trustee, to act only upon those directions which are consistent with the terms of the plan and with ERISA;

(f)    The duty to disclose and inform of any material adverse information about the company which duty entails among other things: (i) a duty to inform plan participants about the financial condition of the company; (ii) an affirmative duty to inform plan participants about material adverse factors which were affecting the company any time the fiduciary knew or should have known, pursuant to his duty to investigate, that failing to make such a disclosure might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of plan participants and their beneficiaries; and

(g)    When a plan is composed of various investment funds, the duty to inform and disclose also includes the duty to impart to plan participants material information which the fiduciary knows or should know is sufficient to appraise the average plan participant of the comparative risks associated with investing in any particular investment.

61.    Defendants breached their fiduciary duties of loyalty and prudence with respect to the Plans' use of Company stock as a Plan investment for, among other reasons, the following:

(a)    The Plans' investment in Company common stock, as a percentage of the Plans' portfolio, was an undiversified investment in a single stock that carried with it an inherently high degree of risk and volatility;

(b)    Defendants failed to provide plaintiffs and Class members with complete and accurate information about LP common stock and the risks associated with individual participants' and the Plans' substantial investment therein;

(c)    Defendants breached their fiduciary duty and their duty to inform and disclose, by encouraging plaintiffs and Class members to continue to make and maintain substantial investments in LP common stock in their Plan accounts; and

(d)    Defendants unreasonably delayed the transfer of participants' LP ESOT accounts to their 401(k) accounts and the lifting of restrictions on the sale of LP common stock shares acquired through employer matching and profit sharing contributions until July 2002.

62.    In addition to defendants' duties of loyalty and prudence, the fiduciary duties imposed on defendants by ERISA also entail a duty on Plan management to conduct an independent and continuing investigation into the merits of the Plans' investments to ensure that each investment is

suitable for the Plans. Defendants breached their fiduciary duties of loyalty and prudence by failing to investigate and monitor the suitability of the Company's common stock as an investment option. Had defendants conducted a reasonable investigation into the Plans' investment in Company stock they would have known that, during the Relevant Period, LP common stock was not a suitable or prudent investment for the Plans' participants.

63. Defendants' duty of loyalty also entailed a duty to avoid conflicts of interest and to resolve them promptly should they occur. Under ERISA, a fiduciary must always act for the sole benefit of the participants and their beneficiaries. Defendants breached their duty of loyalty by failing to avoid conflicts of interest and to resolve such conflicts promptly when they did occur. Defendants continued to invest the participants' and beneficiaries' monies in LP common stock and imposed restrictions on the sale of such stock despite the unsuitability of such a risky investment. Thus, defendants failed to act to protect plaintiffs' and Class members' interests in the administration of the Plans.

64. Defendants deprived all participants of the opportunity to exercise control over their Plans' assets because they did not have the "opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the plan, and incidents of ownership appurtenant to such investments" pursuant to 29 C.F.R. §2550.404c-1(b)(2)(i)(B).

65. For the reasons set forth above, defendants are not relieved of their fiduciary duties to the extent that they might otherwise have been so under ERISA §404(c), 29 U.S.C. §1104(c).

66. As a result of defendants' breaches of their fiduciary duties owed to plaintiffs and Class members, the Plans suffered substantial losses and plaintiffs and Class members were harmed because, throughout the Relevant Period, a substantial percentage of the Plans' assets were invested in LP common stock and because the value of LP common stock substantially under-performed the market and other reasonable investment alternatives. Since plaintiffs and Class members did not have independent control over how their assets were ultimately invested, defendants were responsible for ensuring the Plans' investments were and remained prudent.

## CLASS ACTION ALLEGATIONS

67.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of subparts 23(a) and (b)(2)-(3) are met with respect to the Class defined below.

68.    The Class consists of all participants and beneficiaries of the Plans for whose individual accounts the Plans held shares of LP common stock at any time during the Relevant Period (from January 1, 1999 to the present) (the "Class"). Excluded from the Class are the Court, officers and directors of LP, members of their immediate families and affiliates.

69.    The Class consists of thousands of persons located throughout the United States. Class members are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. The exact number and identity of Class members can be determined through discovery.

70.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to Class members which predominate over questions which may affect individual Class members include:

(a)    Whether ERISA applies to the claims at issue here;

(b)    Whether defendants owe and owed fiduciary duties to Class members;

(c)    The nature of the fiduciary duties defendants owe or owed to Class members;

(d)    Whether defendants breached their fiduciary duties under ERISA; and

(e)    The extent of harm sustained by Class members and the appropriate measure of relief.

71.    Plaintiffs' claims are typical of those of the Class because plaintiffs and Class members suffered similar harm as a result of defendants' unlawful and wrongful conduct. Absent a class action, Class members may not receive restitution or other appropriate relief and will continue to suffer losses, and these violations of law will proceed without remedy.

72.    Plaintiffs are committed to pursuing this action and have retained counsel experienced in class action litigation of this nature. Plaintiffs will fairly and adequately represent the interests of the Class and plaintiffs have no interests which conflict with those of the Class.

73.    The prosecution of separate actions by Class members would create a risk of establishing incompatible standards of conduct for defendants. Individual actions may, as a practical matter, be dispositive of the interests of the Class.

74.    A class action is the superior method for fair and efficient adjudication of this controversy. The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel, highly experienced in class actions, sees no difficulty in the management of this case as a class action.

### COUNT I

**Breach of Fiduciary Duty Against Defendant
Louisiana-Pacific, Corp. and Individual Defendants**

75.    Plaintiffs incorporate by reference and reallege ¶¶1-74.

76.    The Plan is governed by the provisions of ERISA, 29 U.S.C. §§1001, *et seq.*, and plaintiffs and Class members are participants and/or beneficiaries in the Plans. Defendant LP and each of the Individual Defendants exercised discretionary authority or control with respect to the management of the Plans or Predecessor Plans and their assets and is a fiduciary or co-fiduciary to the Plans under the terms of ERISA.

77.    Defendant LP and the Individual Defendants violated their fiduciary duties of loyalty and prudence by: (a) permitting a significant percentage of the Plans' assets to be invested in Company stock; (b) failing to adequately investigate and monitor the merits of the Plans' investments in Company stock; (c) failing to take steps to eliminate or reduce the amount of Company stock in the Plans; (d) failing to adhere to the purposes of the Plans insofar as those purposes included, *inter alia*, the provision of retirement security to eligible employees; and (e) failing to give plaintiffs and Class members adequate information about the composition of the Plans' portfolio and accurate information about LP, its financial prospects and its suitability as a Plan investment.

78.    Defendant LP and the Individual Defendants also breached their fiduciary obligations by imposing restrictions on plaintiffs' and Class members' investments in Company stock and by promoting LP common stock as a prudent Plan investment.

79.     Defendant LP and the Individual Defendants also breached their fiduciary duties by delaying the transfer of participants' LP ESOT accounts into their 401(k) accounts and requiring that the transferred accounts be invested in Company stock.

80.     At all times relevant to the allegations raised herein, LP and the Individual Defendants were co-fiduciaries of the others.  Each defendant participated in the fiduciary breaches described herein, enabled its co-fiduciaries to commit such fiduciary breaches by its failure to adequately monitor the conduct of its co-fiduciaries and its own failure to comply with the provisions of ERISA and/or had knowledge of the breaches of its co-fiduciaries and failed to take reasonable efforts to remedy such breaches.

81.     As a result of LP and the Individual Defendants' breaches of fiduciary duties, plaintiffs and Class members, as well as the Plans, suffered losses, the exact amount of which will be determined at trial.  LP and the Individual Defendants are personally liable to plaintiffs and Class members for these losses.

## COUNT II

### Breach of Fiduciary Duty Against Defendant Charles Schwab Trust Company

82.     Plaintiffs incorporate by reference and reallege ¶¶1-81.

83.     Defendant Schwab breached its duties of loyalty and prudence by: (a) failing to reduce the concentration of LP common stock held in the Plans when it was prudent to do so; (b) failing to sell LP common stock shares held by the Plans when it would have been prudent to do so; and (c) failing to provide plaintiffs and Class members with adequate information about the composition of the Plans' portfolio and accurate information about LP, its financial prospects and its suitability as a Plan investment.

84.     Defendant Schwab knowingly participated in the fiduciary breaches of its co-fiduciaries, enabled its co-fiduciary to commit such fiduciary breaches by its own failure to comply with the provisions of ERISA, and had knowledge of the breaches of its co-fiduciaries and failed to make reasonable efforts to remedy such breaches.

85.     As a result of Schwab's breaches of fiduciary duty, plaintiffs and Class members, as well as the Plans, suffered losses, the exact amount of which will be determined at trial.  Defendant Schwab is liable to plaintiffs and Class members for those losses.

## COUNT III

### Breach of Fiduciary Duty – ERISA Disclosure Requirements
### Against Defendant Louisiana-Pacific, Corp., Individual Defendants and
### Defendant Charles Schwab Trust Company

86.     Plaintiffs incorporate by reference and reallege ¶¶1-85.

87.     Defendants failed to advise plaintiffs and Class members that their investments in the Plans were at substantial risk as a result of the concentration of LP stock as a percentage of the Plans' total assets.  Defendants also failed to provide plaintiffs and Class members with accurate information about the Company's current and future financial prospects.

88.     Because of the disparity in knowledge between defendants and plaintiffs and Class members, plaintiffs and Class members relied on defendants to provide them with accurate and sufficient information about LP and the Plans' investment therein, which was material to the suitability of Company stock as a prudent investment option.

89.     By failing to convey complete and accurate information to plaintiffs and Class members, defendants violated their fiduciary duty to disclose sufficient information to inform plaintiffs and Class members of the risks associated with investment in Company stock when defendants should have known that the failure to disclose such material information would result in losses to plaintiffs and Class members.

90.     As a result of defendants' failure to disclose and inform, plaintiffs and Class members suffered losses, the exact amount of which will be determined at trial.  Defendants are personally liable to plaintiffs and Class members for these losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Determining that this is a proper class action to be certified under Rule 23 of the Federal Rules of Civil Procedure;

B.  Declaring that defendants have violated the duties, responsibilities and obligations imposed upon them as fiduciaries and co-fiduciaries and that they violated the ERISA disclosure requirements as described above;

C.  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure;

D.  Awarding plaintiffs, Class members and the Plans restitution and/or remedial relief;

E.  Awarding plaintiffs, Class members and the Plans pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert witness fees and other costs; and

F.  Awarding such other relief as this Court may deem just and proper.

DATED:  November 25, 2002

GRENLEY ROTENBERG EVANS
  BRAGG & BODIE, P.C.
GARY I. GRENLEY, OSB #75138
DAVID E.  DEAN, OSB #81206
1211 S.W. Fifth Avenue
1100 Pacwest Center
Portland, OR  97204
Telephone:  503/241-0570
503/241-0914 (fax)

Liaison Counsel

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
WILLIAM J. DOYLE II
DOUGLAS R. BRITTON

_William J. Doyle II_

_____
WILLIAM J. DOYLE II

401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

MILBERG WEISS BERSHAD
 HYNES & LERACH LLP
NANCY M. JUDA
1100 Connecticut Avenue, N.W.
Suite 730
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

Lead Counsel for Plaintiffs

WHATLEY DRAKE, LLC
JOE R. WHATLEY
2323 Second Avenue North
Birmingham, AL  35203
Telephone:  205/328-9576
205/328-9669 (fax)

KNIGHT & GRIFFITH
STEVE GRIFFITH
Post Office Drawer M
Cullman, AL  35056-0930
Telephone:  256/734-0456
256/734-0466 (fax)

Attorneys for Plaintiff Frederick J. Darlington

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
1010 Second Avenue, Suite 2360
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

WILLIAM H. MURR, ESQ., OSB #88274
9820 East Burnside
Portland, OR  97216
Telephone:  503/256-6704
503/252-2701 (fax)

DeCARLO, CONNOR & SELVO
JOHN T. DeCARLO
DANIEL M. SHANLEY
533 South Fremont Avenue, 9th Floor
Los Angeles, CA  90071-1706
Telephone:  213/488-4100
213/488-4180 (fax)

Attorneys for Plaintiff Richard A. Jordan

N:\CASES\L-Pacific.ERISA\KJC80173.cpt